**DU BARRY OF HOLLYWOOD, INC.,**
a corporation, Appellant,

v.

**RICHARD HUDNUT, a corporation,**
Appellee.

No. 17320.

United States Court of Appeals
Ninth Circuit.

Oct. 10, 1963.

Harry Price, New York City, and Warren T. Jessup, Hollywood, Cal., for appellant.

Horton & Foote and Joseph K. Horton, Los Angeles, Cal., Mudge, Stern, Baldwin & Todd, Paul D. Miller, Milton Black and Stuart A. Summit, New York City, for appellee.

Before STEPHENS, JERTBERG and BROWNING, Circuit Judges.

STEPHENS, Circuit Judge.

This is an action for infringement of plaintiff-appellee's registered trade-mark "Du Barry," and some modification of the name "Du Barry," and for unfair competition in connection therewith. Appellee Richard Hudnut, a New York corporation, brought this action in December, 1959, against Du Barry of Hollywood, Inc., alleging trade-mark infringement and unfair competition in that the defendant-appellant used the designation "Du Barry" in connection with its products, in its advertising, and in its corporate name, and, further, that it used a type of script and representation of a crown on some of its products similar to the script and crown used by and identified with Hudnut.

Federal jurisdiction is based on diversity of citizenship and the Trade Mark Acts of 1905 and 1946, as amended. 15 U.S.C. § 1051 et seq. Jurisdiction of the pendant claim of unfair competition is based on 28 U.S.C. § 1338(b).

The district court found that the plaintiff-appellee was the owner of valid and subsisting trade-mark rights for the name "Du Barry" in the field of toilet goods, cosmetics, and broadly related fields of products for woman's comfort, used in her eternal quest for apparent

youth and pleasant appearance. The court held that the products of both plaintiff and defendant were of the "same general class," and that defendant's use of the name "Du Barry" was likely to cause confusion and deceive the purchaser as to the source or origin of the goods so marked.

The trial court further found that the defendant's products and trade paper advertising were conspicuously labeled with the trade-mark and trade name "Du Barry," "By Du Barry," or "From Du Barry," often printed in substantially the same style of script which is displayed by the plaintiff on its products.

The district court held that the defendant had infringed Hudnut's trademark rights, and, in so doing, had been guilty of unfair competition. The court granted permanent injunctive relief, prohibiting the defendant from using the name "Du Barry" in any manner whatsoever. Du Barry of Hollywood, Inc., appeals.

Appellee Richard Hudnut is the corporate successor to the perfume and soap business established before 1900 by Richard Hudnut, an individual, and said corporation has been continuously engaged in the manufacture and sale of many notions for use by women in the fields of toilet goods and cosmetics. These products are distributed through the usual channels of retail consumer trade such as drug stores and department stores. One line of Hudnut products has been designated by the name "Du Barry" for more than fifty years and registered by Richard Hudnut and its successors under the name "Du Barry" with the United States Patent Office.

In addition to the "Du Barry" line of products, Hudnut has used the name in two other business ventures. First, from 1930 to 1953 Hudnut maintained a Du Barry Beauty Salon on Fifth Avenue in New York City. Second, in conjunction with the beauty salon, Hudnut operated the Du Barry Success School, a correspondence course designed to teach beauty hints such as proper skin care, healthful diets, and proper exercises.

Hudnut presently maintains a Du Barry Salon in New York City, its own retail outlet for "Du Barry" products. Appellee's full name in connection with its "Du Barry" line is "Richard Hudnut, Du Barry Division," but its products are commonly referred to as "Du Barry," "Du Barry's" or "By Du Barry."

In 1947 defendant-appellant's founder began a small business making shoulder pads for women's dresses under the name "Du Barry of Hollywood." In 1950 appellant was incorporated under the name Du Barry of Hollywood, Inc., and it continued to use the name as a trade-mark on its products. Since 1950, appellant's line of merchandise has included such varied notion items as See-Thru Press Cloths, Slip-On Hanger Covers, Apron Hoops, lint brushes, Dura-Shammy Cloths, Fashion Needles, scarves, Grip-Clips, cushions, Heel Rings, plastic bags, glass cases, sweather bags, Fountain Faucets, aprons and similar products for women.

In 1953 the first net caps or hairnets were sold but as of 1954 the shoulder pads still constituted the bulk of appellant's business. The hairnets rapidly became appellant's principal product, accounting for more than ninety per cent of its sales in 1959.

Of appellant's total sales, a large portion is made to beauty supply houses which provide the beautician with beauty products for use in rendering services and for resale to customers.

The record indicates that in addition to the distribution through beauty supply houses, some of the appellant's output is marketed from the retail notions counters of various drug and department stores. By comparison, Hudnut's "Du Barry" line of products is marketed almost entirely from retail cosmetic and toiletry counters of similar stores throughout the nation. It appears, as recognized by the trial court, that the parties used different channels of distribution for a considerable percentage of their output, but that for the remainder they shared some of the same channels. In certain instances, appellant's hairnets and net caps appeared in close

proximity with appellee's cosmetics on the same counters.

Defendant-appellant, attempting to make the most out of the parties' use of different channels, argues that such difference constitutes a material factor in determining the issue of customer confusion. The theory is that the greater the use of differing channels of distribution, the less the likelihood of confusion. We believe the trial court did not commit reversible error in concluding that because appellant's hairnets and caps were of the "same general class" as appellee's products and were sold ultimately to the same class of customers confusion as to origin was likely to result. The desire to purchase these items is obviously aroused by woman's inherent quest for beautification. Goods bearing the "Du Barry" mark of either of the parties are therefore purchased generally by women, all of whom have in mind a similar purpose. The fact that a community of customers purchase goods falling within the same general class adds significant strength to the likelihood that consumer confusion will arise. Therefore, appellant's hairnets and net caps and appellee's toiletries and cosmetics, being "of the same general class," are likely to lead the customers to whom both are offered, though through partially different channels, into believing that a "Du Barry" hairnet made by appellant and a "Du Barry" cosmetic by Hudnut have a common origin. This is the thing which the trial court believed could not be tolerated, and with which we are in agreement.

We do not say that a difference in the channels of distribution would not in some cases constitute a material factor. Under other circumstances, differing channels might in fact tend to minimize consumer confusion. Appellant, however, seeks to persuade the court that on the present state of facts use of partially differing channels erases the possibility of confusion. With this contention we disagree.

Though it appears that the name Du Barry has some meaning and significance, and that it has been used at times by the entertainment industry to depict the woman who historically bore the name, we believe that the long use of the "Du Barry" name on Hudnut's products for women has created for Hudnut a name fanciful in character, which suggests a broad class of related products produced or sponsored by appellee. The fact that goods and services unrelated to this class of products have, on occasion, been offered for sale to the public under the name "Du Barry" does not diminish the strength of Hudnut's mark in its own field of cosmetics, toiletries and related articles for women.

One of appellant's basic contentions is that the effectiveness of the "Du Barry" mark as used by Hudnut has been of short duration and that the secondary meaning on which Hudnut relies did not exist at the time appellant first began using the mark in 1947. It therefore claims priority of use, and seeks to extend that priority to its entry into the hairnet field in 1953. An appraisal of the record, however, indicates that a secondary meaning had long been attached to Hudnut's "Du Barry" line. Indeed, by 1947 Hudnut's expenditures for "Du Barry" advertising nation-wide had exceeded twenty million dollars. Sales as of 1947 totaled one hundred seventy-five million dollars. The Du Barry Beauty Salon on New York's Fifth Avenue had been operated by Hudnut since 1930, and, in connection therewith, the Du Barry Success School claimed correspondence students throughout the United States.

■ On the basis of these facts, the trial court did not err in its conclusion that Hudnut's "Du Barry" mark was well established, and had achieved national prominence prior to the time Du Barry of Hollywood entered its related area of manufacture.

■ The defense of laches seems not to have been greatly relied upon, and, as the findings and judgment indicate, the court below was of the opinion that such defense could not be supported. We agree.

The evidence upon which the trial court based its conclusions and findings is sufficient. Appellant has intentionally and deliberately made an illegal seizure of the mark and symbolic crown of appellee Hudnut. It has taken advantage of the nation-wide good will which Hudnut has purchased dearly, and it has appropriated Hudnut's property for its own use, thereby achieving a measure of financial success through the illegal infringement. The courts are duty bound to prevent such practice through the writ of injunction.

The decree will be, and is hereby, affirmed.